UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONSOLIDATED RAIL CORP. and
NORFOLK SOUTHERN RAILWAY CO.,                    Case No. 09-10179

        Plaintiff(s),                                Honorable Nancy G. Edmunds

v.

GRAND TRUNK WESTERN
RAILROAD CO.,

        Defendant(s).
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' (COUNTER-DEFENDANT) MOTION TO DISMISS FIRST
AMENDED COUNTERCLAIM [27]**

This matter comes before the Court on Plaintiffs' (Counter-Defendant) motion to dismiss for failure to state claims upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Plaintiffs' (Counter-Defendant) motion is GRANTED IN PART and DENIED IN PART.

**I.    Facts**

Plaintiff (Counter-Defendant) Norfolk Southern Railway Company (NSR) is a major freight railroad that is primarily engaged in the rail transportation of raw materials, intermediate products, and finished goods throughout the United States. Plaintiff (Counter-Defendant) Conrail Rail Corporation (CR) owns and operates railway lines in Michigan for the benefit of NSR. Defendant (Counter-Plaintiff) Grand Trunk Western Railroad Company (GTW), successor by merger to Grand Trunk Western Railroad Incorporated, owns and operates railway lines in this judicial district. (Am. Compl. ¶¶ 1-3.)

At some point not disclosed in the pleadings, NSR contracted with the E.C. Korneffel Company (Korneffel) to provide rail transportation services to Korneffel's facility in Trenton, Michigan (NSR-Korneffel Contract). NSR subsequently engaged CR to provide the contracted services to Korneffel. To access Korneffel's facility, CR was required to cross railroad tracks owned by GTW. (Am. Compl. ¶¶ 27-29.)

CR alleges that although GTW initially permitted CR to cross its tracks, GTW later changed its position and refused to permit CR to do so. CR also alleges that GTW refused to acknowledge its long-standing contractual right to cross GTW's tracks, including its purported contractual right to cross GTW's tracks to service Korneffel. CR avers that the basis for its contractual rights arise under a contract dated November 11, 1897 (1897 Agreement). (*Id.* ¶¶ 6, 15-17.)

NSR alleges that GTW knowingly interfered with the NSR-Korneffel Contract. NSR also alleges that GTW subsequently solicited and contracted with Korneffel for the same rail transportation services provided for in the NSR-Korneffel Contract, thereby depriving NSR of future business that it had an expectation of securing. (*Id.* ¶¶ 6, 34-37.)

GTW admits that it had initially permitted CR to cross its tracks and that it later withdrew such permission. GTW, however, alleges that it only granted CR permission to cross its tracks to provide rail transportation services to Trenton Steel Warehouse (Trenton Steel), not Korneffel. GTW denies that CR has any contractual right to cross its tracks to service any customer other than Trenton Steel and denies that its refusal to permit CR to cross its tracks to service Korneffel breaches the 1897 Agreement. GTW also denies that it interfered with the NSR-Korneffel Contract or that it contracted with Korneffel for future business that NSR had an expectation of securing. (Answer ¶¶ 1-6.)

2

### A. History of Applicable Railroad Near Trenton, Michigan

Prior to 1897, the area around Trenton, Michigan was served by two railroads running north and south: the Detroit, Monroe & Toledo Railroad Company (DMT), and the Toledo, Canada Southern & Detroit Railroad Company (TCSD). In 1897, DMT became owned and operated by the Lake Shore & Michigan Southern Railway Company (LSMS) and TCSD became owned and operated by the Michigan Central Railroad Company (MC). Effective April 1, 1976, LSMS and MC, as predecessors in interest, conveyed railroad assets, including the purported contractual rights associated with the 1897 Agreement, to CR. (Am. Compl. ¶¶ 7-9.)

One of GTW predecessors in interest in the Trenton area was the Detroit, Lima & Northern Railway Company (GTW's Predecessor). (Answer ¶ 11.) In 1897, GTW's Predecessor sought to construct a railway line through the Trenton area. This railway line was planned to run parallel to the CR line from the Trenton area north to Delray, a neighborhood in Detroit, Michigan. The construction of this line required GTW's Predecessor to obtain rights to cross CR tracks. (Am. Compl. ¶¶ 12-13.)

### B. 1897 Agreement

On November 11, 1897, CR and GTW's Predecessor concluded the 1897 Agreement purportedly addressing each parties' rights to cross the tracks of the other. (*Id.* ¶ 14, Pls.' Ex. A.) Under the 1897 Agreement, CR granted GTW's Predecessor permission to construct a railway line crossing its tracks. (*Id.* ¶ 15.) In exchange, the 1897 Agreement granted CR "the right at any time or times hereafter to cross with spur tracks any portion of [GTW's Predecessor's] tracks and right of way between Trenton and The Wabash Railway near Delray without cost or payment of compensation therefore to GTW's

3

Predecessor]." (Answer ¶ 16.) According to CR, this contractual right was provided so that CR could forever continue to access customers located on either side of the railway line that would be constructed. (Am. Compl. ¶ 17.)

Additionally, the 1897 Agreement provided that it "shall bind the successors and assigns of the respective parties thereto." (*Id.*) CR alleges that the 1897 Agreement is binding on itself and GTW, as successors in interest to and as assignees of the original parties. (*Id.* ¶ 18.) Accordingly, CR contends that the 1897 Agreement grants it the right to cross GTW tracks, including the right to cross GTW tracks to service Korneffel. GTW, on the other hand, denies that the 1897 Agreement imposes any obligation on it to permit CR access to Korneffel. (Answer ¶ 18.)

### C. 1993 Arbitration

This is not, however, the first time these parties have disputed the contractual rights to cross the tracks of the other. Beginning in 1993, CR sought to exercise its purported rights–established between predecessor entities under prior agreements,[1] including the 1897 Agreement–to cross GTW's tracks to service Trenton Steel. GTW took a position then as it does now–that CR possesses no contractual right to cross its tracks. CR and GTW agreed to submit the 1993 dispute to resolution by arbitration. (Am. Compl. ¶ 19.)

The sole question submitted to arbitration was: "Does CONSOLIDATED RAIL CORPORATION [...] have the right, pursuant to 'the Agreements,' to cross the tracks, facilities, right-of-way, and other property of GRAND TRUNK WESTERN RAILROAD, [...]

---

[1] In total, CR and GTW are allegedly successor entities to three agreements: (1) 1897 Agreement; (2) June 25, 1901 Agreement ("1901 Agreement"); and (3) June 1, 1903 Agreement ("1903 Agreement"). (Am. Countercl. ¶ 6, Def.'s Ex. 1, 2, 3.)

4

in or near Trenton, Michigan for the purpose of providing [CONRAIL] access to and the ability to provide rail freight transportation to the Trenton Steel Warehouse." (Am. Compl. ¶ 20; Am. Countercl., Def.'s Ex. 4.) On January 21, 1996 the arbitrators answered the question submitted: "yes." (Am. Compl. ¶ 22; Am. Countercl., Def.'s Ex. 4.)

### D.  Trenton Steel Agreement

Following the arbitration, on May 1, 1996, CR and GTW entered into an agreement entitled "Trackage Rights Agreement between Grand Trunk Railroad Incorporated & Consolidated Rail Corporation to Service Trenton Steel Warehouse" (Trenton Steel Agreement) outlining the terms under which CR would be permitted to cross GTW's tracks to service Trenton Steel. (Am. Compl. ¶ 24; Am. Countercl., Def.'s Ex. 5.) Specifically, the Trenton Steel Agreement provides:

> Subject to the terms and conditions herein provided, GTW hereby grants to Conrail the right to operate its trains, locomotives, cars and equipment with its own crews (hereinafter referred to as the "Trackage Rights") in either direction over the following segments of GTW's railroad for the sole purpose of serving Trenton Steel Warehouse or its successor.

(Am. Countercl. ¶ 10.) On May 28, 1996, CR filed a "Notice of Exemption" with the Surface Transportation Board. (*Id.* ¶ 12; Def.'s Ex. 7.) Under Paragraph 2 of the Exemption Notice, CR represented: "The trackage rights granted to Conrail by GTW restrict Conrail to using the Subject Trackage for purposes of serving the Trenton Steel Warehouse in the city of Trenton, Michigan." (*Id.* ¶ 13.) CR also represented in Paragraph 6 of the Exemption Notice that "This transaction will allow Conrail to provide rail service to the Trenton Steel Warehouse." (*Id.* ¶ 14.)

### E.  Access to Korneffel

At some point not specified in the pleadings, CR began providing rail transportation services to Korneffel–as contemplated by the NSR-Korneffel Contract. Korneffel is located adjacent to Trenton Steel and abuts the GTW spur track that CR utilized to service Trenton Steel. (Am. Compl. ¶ 26.) To reach the Korneffel facility, CR was required to cross tracks owned by GTW. (Am. Countercl. ¶ 20.)

In April 2008, allegedly suspecting use not contemplated by the Trenton Steel Agreement (i.e., access to Korneffel), GTW contacted CR requesting information regarding CR's use of GTW's tracks. (*Id.* ¶ 22.) CR informed GTW that it had provided rail transportation services to Trenton Steel in December 2007, May 2007, and June 2007; and to Korneffel in June 2007, July 2007, and in each month from December 2007 to May 2008. (*Id.* ¶22.) Upon receiving that information GTW informed CR that it would no longer permit CR to utilize GTW's tracks to access Korneffel. GTW advised its dispatchers not to permit CR to cross such tracks, and GTW locked out its derail precluding any further use of GTW's tracks by CR to access Korneffel. (*Id.* ¶ 23.)

CR, at some date not disclosed in the pleadings, attempted to cross GTW's tracks to service Korneffel. (Am. Compl. ¶ 29.) GTW denied CR access to its tracks. (Answer ¶ 29.) As a result, CR did not deliver the freight to Korneffel and NSR was, thus, prevented from meeting its obligation under the NSR-Korneffel Contract. As a temporary solution, NSR agreed to pay GTW a portion of the revenues it was to receive under the NSR-Korneffel Contract. Following that agreement, GTW permitted CR to cross its tracks to deliver that particular shipment to Korneffel. (Am. Compl. ¶¶ 31-32.)

On December 11, 2008, CR wrote GTW asserting that it intended to exercise its purported rights to cross GTW's tracks to continue to service Korneffel as provided under

6

the 1897 Agreement. (Am. Compl. ¶ 33; Pls.' Ex. B.) CR alleged that, because Korneffel was within the geographic area contemplated by the 1897 Agreement, it had a contractual right to cross GTW's tracks to service Korneffel. (*Id.* ¶¶ 26, 28, 30.) GTW again denied that the 1897 Agreement required it to permit CR to cross its tracks to service Korneffel. (Answer ¶¶ 26, 28-29, 32-33.) GTW contended that the 1996 arbitration award and the Trenton Steel Agreement limited CR's ability to cross GTW's tracks solely to provide rail transportation services to Trenton Steel. (Am. Countercl. ¶ 25.)

Because of CR's inability to cross GTW's tracks, CR ceased servicing Korneffel. (Am. Compl. ¶ 33.) Subsequent to December 2008, GTW entered into an agreement with Korneffel under which GTW agreed to provide rail transportation services to Korneffel. (Answer ¶ 35.) As of the commencement of this action, GTW was still providing rail transportation services to Korneffel. (*Id.* ¶ 36.)

### F.  Parties' Claims and Counterclaims

The parties' opposing positions regarding the rights and obligations to cross each others' tracks form the basis of this action. Plaintiffs, CR and NSR, have each asserted two claims against Defendant GTW. GTW counterclaimed asserting, in total, thirteen claims against Plaintiffs. All of the claims asserted by Plaintiffs' and Defendant share one commonality: each require this Court to address one question. Does CR have a contractual right to cross railway tracks owned by GTW to service Korneffel?

In Plaintiffs' Amended Complaint, CR requests a declaration that the 1897 Agreement grants it the right to cross GTW's tracks to serve Korneffel. Alternatively, CR seeks a judgment that GTW, in preventing CR from crossing its tracks, breached the 1897 Agreement. (Am. Compl. ¶¶ 38-46.) In addition, NSR asserted two claims against GTW

7

alleging that, by preventing CR from providing rail transportation services to Korneffel on NSR's behalf and through GTW's subsequent contract with Korneffel to provide such services, GTW has tortiously interfered with NSR's existing and prospective contractual and economic relations. (*Id.* ¶¶ 47-63.) Plaintiffs, CR and NSR, seek declaratory judgment, permanent injunctive relief, damages and specific performance. (*Id.* ¶¶ 1-6.)

GTW, in its Amended Counterclaim, asserts three contract-based counterclaims: two for declaratory judgment and one for breach of contract. GTW's declaratory judgment counterclaims, Count I and Count II, request this Court to declare the rights and liabilities of the parties under the 1897 Agreement and the Trenton Steel Agreement, specifically declaring that CR only has the right to cross GTW's tracks to service Trenton Steel, not Korneffel. (Am. Countercl. ¶¶ 27-46.) GTW's breach of contract counterclaim, Count III, alleges that, because CR crossed GTW's tracks to service Korneffel, CR breached the Trenton Steel Agreement. (*Id.* ¶¶ 47-51.)

In addition to these contract-based counterclaims GTW asserts several other counts against CR and NSR, most of which are tort counterclaims. Counts IV and V allege that CR and NSR interfered with GTW's prospective business relationship with Korneffel in that CR and NSR knew or should have known that GTW, in the construction of its tracks, had a reasonable business expectation of providing rail transportation services to adjacent businesses, including Korneffel, and had CR not provided rail services to Korneffel then GTW would have necessarily been the only railroad entity that would have been able to provide such services. (*Id.* ¶¶ 52-77.) Counts VI and VII allege that, by crossing GTW's tracks and misrepresenting its ability to use such tracks in contracting with Korneffel, CR and NSR engaged in unfair competition. (Am. Countercl. ¶¶ 78-95.) Counts VIII and IX

8

allege that, by crossing GTW's tracks to serve Korneffel, CR and NSR are liable for statutory conversion under Mich. Comp. Laws §§ 600.2919a(1)(a), (2).[2] (*Id.* ¶¶ 96-115.) Counts X and XI allege that, by crossing GTW's tracks and in servicing Korneffel, CR and NSR have been unjustly enriched. (*Id.* ¶¶ 116-125.) Count XII alleges that, by crossing GTW's tracks to service Korneffel, CR trespassed on GTW's real property. (*Id.* ¶¶ 126-132.) Finally, under Count XIII, GTW seeks a permanent injunction enjoining CR from utilizing GTW's tracks to service any business other than Trenton Steel. (*Id.* ¶¶ 133-140.)

This matter is before the Court on Plaintiffs' motion to dismiss eleven of Defendant's thirteen counterclaims. Specifically, Plaintiffs seek dismissal of Counts I and II (Declaratory Judgment), Counts IV and V (Interference With Prospective Business Relationship), Counts VI and VII (Unfair Competition), Counts VIII and IX (Statutory Conversion), Counts X and XI (Unjust Enrichment), and Count XII (Trespass).

## II.   Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the

---

[2] Although both parties refer to GTW's counterclaim under Mich. Comp. Laws § 600.2912a, the applicable statute is presumably 600.2919a. Section 600.2912a is titled "Action alleging malpractice; burden of proof, standard of acceptable professional practice and standard of care," whereas § 600.2919a is titled "Stealing, embezzling, or converting property or buying, receiving, possessing, concealing, or aiding in concealment of stolen, embezzled, or converted property; recovery of treble damages, costs, and attorney fees; other rights or remedies" and § 600.2919a also includes the statutory language cited in the Amended Complaint. (*See* Am. Countercl. ¶¶ 104-105, 114-115.)

complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S. Ct. 1995, 1964-65 (2007). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

10

### III.   Analysis

This matter is before the Court on Plaintiffs' motion to dismiss eleven of Defendant GTW's thirteen counterclaims: two declaratory judgment claims and nine tort claims. Because it is evaluating a Rule 12(b)(6) motion, the Court views the allegations in GTW's Amended Counterclaim in the light most favorable to it and assumes that all allegations are true.

### A.  Tort Counterclaims

Plaintiffs argue that each of GTW's nine tort counterclaims should be dismissed under two alternate grounds. First, Plaintiffs seek dismissal of the tort counterclaims arguing that the alleged breaches of contractual obligations do not give rise to tort claims, as the tort counterclaims do not assert separate and distinct legal duties. Alternatively, Plaintiffs seek dismissal of the tort counterclaims arguing that each challenged count fails to state a cognizable claim upon which relief may be granted and should be dismissed under Fed. R. Civ. P. 12(b)(6).[3]

---

[3] A summary of this Court's disposition is as follows:

Regarding Plaintiffs former argument, this Court holds that all tort counterclaims asserted against NSR sufficiently plead separate and distinct duties arising in tort and contract and, therefore, do not fail as a matter of law. Three of the five tort counterclaims asserted against CR, however, do not allege tort duties that are separate and distinct from its contractual obligations, and, accordingly, are dismissed: Count VIII (Statutory Conversion-CR), Count XII (Trespass-CR), and Count X (Unjust Enrichment-CR).

Under Plaintiffs' alternative argument, this Court holds that GTW has failed to state a claim for relief in pleading Count IX (Statutory Conversion-NSR). As to GTW's other tort counterclaims and its two declaratory judgment counterclaims, this Court finds that the Amended Counterclaim alleges the essential elements of each claim sufficient to survive a Rule 12(b)(6) motion to dismiss.

Accordingly, Plaintiffs' motion to dismiss GTW's counterclaims is GRANTED as to: Count VIII (Statutory Conversion-CR) and Count IX (Statutory Conversion-NSR), Count X (Unjust Enrichment-CR), and Count XII (Trespass-CR); and, Plaintiffs' motion to dismiss

The Court first discusses whether GTW's tort counterclaims allege duties separate and distinct from the contractual obligations.

### 1. Tort Legal Duty "Separate and Distinct" from Contractual Obligation

Under well-settled Michigan law, where a contract exists, a tort claim may only be maintained on the basis of a legal duty that is "separate and distinct from the contractual obligation." *Rinaldo's Constr. Corp. v. Michigan Bell Telephone Co.*, 559 N.W.2d 647, 657-58 (Mich. 1997) (citing *Hart v. Ludwig*, 79 N.W.2d 895, 898-99 (Mich. 1956). *See also Fultz v. Union-Commerce Assoc.*, 683 N.W.2d 587, 592 (Mich. 2004); *Spengler v. ADT Security Svcs., Inc.*, 505 F.3d 456, 457-58 (6th Cir. 2007); *Ferret v. General Motors Corp.*, 475 N.W.2d 243, 246-47 (Mich. 1991). Stated another way, "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Hart*, 79 N.W.2d 895 (quoting Prosser, Handbook of Torts, 1st ed., § 33, at 205).

Limiting GTW to its contract counterclaim–and dismissing the tort counterclaims alleging the same duty as its contractual obligations–maintains the critical distinction between contract and tort. In general, "tort principles[ …] are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their

---

GTW's counterclaims is DENIED as to: Counts I (Declaratory Judgment) and II (Declaratory Judgment), Counts IV (Interference With Prospective Business Relationship-CR) and V (Interference With Prospective Business Relationship-NSR), Counts VI (Unfair Competition-CR) and VII (Unfair Competition-NSR), and Count XI (Unjust Enrichment-NSR).

agreement." *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *6 (E.D. Mich. Jul. 24, 2006) (quoting *Niebarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 615 (Mich. 1992)).

### a.  Same Legal Duty vs. Same Conduct

Each of GTW's nine tort counterclaims are distilled from the same alleged conduct–CR's unauthorized use of GTW's tracks.[4] This is the same conduct that supports GTW's contract-based counterclaims. GTW's tort counterclaims, therefore, rest upon the same factual circumstances as its contract counterclaims.

Plaintiffs argue that, because GTW alleges the same conduct (CR's unauthorized use of GTW's tracks) to serve as the basis for GTW's contract-based counterclaims and tort-based counterclaims, none of the tort counterclaims allege a violation of any duty that is "separate and distinct from" the duties that arise as a result of contractual obligations under the 1897 Agreement and the Trenton Steel Agreement.[5] Plaintiffs conclude that because

---

[4] Each of GTW's tort counterclaims against NSR are also based solely on the conduct of CR. GTW alleges no independent wrongdoing by NSR. (Am. Countercl. ¶¶ 19-21, 69-70, 72-77, 88-95, 109-113, 122-124.)

[5] In its breach of contract counterclaim, GTW asserts that CR "utilized" GTW's tracks "for providing rail freight services to Korneffel," and that this constituted a breach of CR's duties under the Trenton Steel Agreement. (Am. Countercl. ¶ 49.) Its statutory conversion counterclaims, GTW asserts that CR and, through CR's actions, NSR, "utilized" GTW's tracks "to provide rail freight services to Korneffel." (*Id.* ¶¶ 99, 109.) GTW's unjust enrichment counterclaims contend that the "use" of GTW's tracks by CR and, through CR's actions, NSR "to service Korneffel" caused both CR and NSR to be unjustly enriched. (*Id.* ¶¶ 117-118, 122-123.) In its unfair competition counterclaims, GTW asserts that it was harmed by CR's use of GTW's tracks "to acquire Korneffel's rail freight transportation services." (*Id.* ¶¶ 86, 95.) In its tortious interference counterclaims, GTW asserts that CR "utilize[d]" GTW's tracks to "servic[e] Korneffel's rail freight transportation business needs." (*Id.* ¶¶ 59, 72.) Finally, in its trespass counterclaim, GTW asserts that CR "invaded and intruded upon" GTW's tracks in order to "meet Korneffel's rail freight transportation needs." (*Id.* ¶ 128.)

13

the same conduct supports GTW's contract-based counterclaims and tort-based counterclaims, the tort counterclaims should be dismissed.

Plaintiffs' conclusion, however, is erroneous. The threshold inquiry is not whether the party alleges "separate and distinct" conduct to supports its tort and contract claims, but whether the party alleges "separate and distinct" legal duties to support the tort and contract claims. *Rinaldo's*, 559 N.W.2d at 657-58. A party will not be foreclosed from bringing contract and tort claims merely because the same conduct allegedly breaches both contract and tort obligations. *See, e.g.*, *Davis v. Venture One Constr., Inc.*, 568 F.3d 578, 576 (6th Cir. 2009) ("The requirement of a 'separate and distinct' duty from a contractual duty refers to a 'separate and distinct' legal duty, not a 'separate and distinct' task."). In other words, the same conduct can establish viable causes of action in contract and in tort if "separate and distinct" legal duties support those claims.

The question, then, is whether each Plaintiff owed GTW an independent duty, separate and distinct from its contractual obligations, that would give rise to the tort causes of action. *Rinaldo's*, 559 N.W.2d at 658. The varying contractual and tort duties must be examined independently for each Plaintiff to determine if the tort duties are separate and distinct from the contractual duties. *See Lakeland Regional Health Sys. v. Walgreen Health Initiative, Inc.*, 604 F.Supp.2d 983, 995 (W.D. Mich. 2009) (quoting *Rinaldo's*, 559 N.W.2d at 657) ("The question whether a claim sounds in contract or tort 'is not to be resolved by mere allegation, but rather by analysis of whether the facts pled give rise to a legal duty in tort independent of breach of contract.'").

### b. Tort Counterclaims Against Plaintiff NSR

14

GTW has asserted four tort counterclaims against NSR.[6] It has not, however, asserted any contract-based counterclaims against NSR–nor has it been alleged that NSR is a party to a contract with GTW or that NSF owes any contractual duties to GTW. The only contract-based counterclaim brought by GTW is against CR. *See, e.g.*, *Davis*, 568 F.3d at 575 ("A contract between two parties does not determine those parties' obligations with respect to the rest of the world."). As GTW has not alleged the existence any contractual duties between it and NSR, any tort duty that GTW alleges NSR breached would necessarily be a duty separate and distinct from its contractual duties.[7]

### c. Tort Counterclaims Against Plaintiff CR

GTW contends that CR had a contractual duty to perform the Trenton Steel Agreement, and, in performing, a specific duty not to cross its tracks except to service Trenton Steel. Because CR crossed its tracks to service Korneffel, GTW alleges CR breached the contract. The failure to properly perform a contract, however, does not give rise to an action in tort unless the plaintiff alleges a violation of a duty separate and distinct from the duty imposed under the contract. *Fultz*, 683 N.W.2d at 592 ("If no independent duty exists, no tort action based on a contract will lie.").

---

[6] Count V (Interference with Prospective Business Relationship-NSR); Count VII (Unfair Competition-NSR); Count IX (Statutory Conversion-NSR); and Count XI (Unjust Enrichment-NSR). (Am. Countercl. ¶¶ 52-132.)

[7] GTW assumes that NSR's tort liability to GTW is contingent upon CR's tort liability to GTW. *See* Pls.' Mot. at 7. This assumption is erroneous–it does not distinguish between "separate legal duty" and "separate conduct," as discussed above.

An examination of CR's duties within each of GTW's five tort counterclaims[8] against CR is, thus, required. Each of these counterclaims must be reviewed to determine what, if any, duty "imposed by the law upon all" exists, and not simply "a duty arising out of the intentions of the parties themselves [pursuant to a contract] and owed only to those specific individuals to whom the promise runs." *Hart*, 79 N.W.2d at 898-99.

### (1) Count VIII (Statutory Conversion-CR), Count XII (Trespass-CR), and Count X (Unjust Enrichment-CR)

GTW's statutory conversion, trespass, and unjust enrichment counterclaims against CR are merely a restatement of its breach of contract counterclaim against CR–the same legal duty arises under each. *See, e.g.*, *City of Romulus v. Lanzo Constr. Co., Inc.*, No. 274666, 2008 WL 1829686, at *1-2 (Mich. Ct. App. April 24, 2008) ("[R]eview of the pleaded allegations reveals that the claim of negligence is merely a restatement of the breach of contract action ... [as both] are premised on the ... same duty."). The duties associated with these three tort counterclaims "arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort." *Rinaldo's*, 559 N.W.2d at 656. As discussed below, GTW has failed to demonstrate that CR violated a legal duty separate and distinct from it contractual obligations, and, as such, "no tort action based on contract will lie." *Fultz*, 683 N.W.2d at 591; *see also Rinaldo's*, 559 N.W.2d at 658. Accordingly, Count VIII (Statutory Conversion-CR), Count X (Unjust Enrichment-CR), and Count XII (Trespass-CR) are dismissed.

---

[8] Count IV (Interference with Prospective Business Relationship-CR); Count VI (Unfair Competition-CR); Count VIII (Statutory Conversion-CR); Count X (Unjust Enrichment-CR); and Count XII (Trespass-CR). (Am. Countercl. ¶¶ 52-140.)

16

The legal duty that was allegedly breached under Count VIII, the statutory conversion counterclaim against CR, was the duty not to "convert[] property to [one's] own use." Mich. Comp. Laws § 600.2919a(1)(a). Specifically, GTW claims that CR converted its railway tracks in CR's unauthorized use of the tracks. This legal duty is the same legal duty that arises under its contract counterclaim: the duty not to utilize GTW's tracks in an unauthorized manner. GTW's attempt to rename this contractual duty in terms of a statutory conversion claim does not change the fact that the legal duty is the same. *See, e.g.*, *Rinaldo's*, 559 N.W.2d at 658 (holding that plaintiffs could not state a cognizable cause of action in tort stated "regardless of the variety of names plaintiff gives the claim, plaintiff is basically complaining of" duties arising under the contractual relationship) (internal citations and quotations omitted). As GTW has not alleged a legal duty separate and distinct from its contractual obligations, the statutory conversion counterclaim against CR is dismissed.

The legal duty allegedly breach under Count XII, the trespass counterclaim against CR, was the duty not to "[invade] the plaintiff's interest in the exclusive possession of his land." *Terlecki v. Stewart*, 754 N.W.2d 899, 907 (Mich. Ct. App. 2008) (internal quotations and citations omitted). Specifically, GTW claims that CR invaded its railway tracks in CR's unauthorized use of the tracks. Like the statutory conversion counterclaim, this is the same legal duty that arises under its contract counterclaim. As such, GTW's trespass counterclaim against CR is also dismissed.

GTW has not alleged, nor argued in response to Plaintiffs' motion, that Count X, the unjust enrichment counterclaim against CR, encompasses a legal duty separate and distinct from the contractual obligations. Although GTW states in conclusory manner that

17

its unjust enrichment counterclaim alleges a separate and distinct duty, it fails to specify what special relationship existed between itself and CR. It appears from the pleading that the legal duty arising under GTW's unjust enrichment counterclaim is, once again, the same legal duty that arises under its contract counterclaim: the duty not to utilize GTW's tracks in an unauthorized manner. Accordingly, GTW's unjust enrichment counterclaim against CR is dismissed.

GTW also contends that dismissal is inappropriate as it may plead inconsistent claims in contract and tort under Fed. R. Civ. P. 8(d). Rule 8(d) provides:

> (2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

> (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d)(2)-(3). GTW's assertion is correct: it may plead claims in both contract and tort even though the contract and tort claims may be inconsistent. This argument, however, will not necessarily preclude dismissal of such inconsistent claims as "the Federal Rules of Civil Procedure do not alter substantive rights among the parties." *Klusty v. Taco Bell Corp.*, 909 F.Supp. 516, 521 (S.D. Ohio 1995). The rule set forth in *Rinaldo's*–that tort claims are properly dismissed where the claim is not based on duties separate and distinct from contractual obligations–is a substantive rule. Notwithstanding Rule 8(d), this Court may grant motions to dismiss alternatively plead claims, or any claim for that matter, that do not plead facts sufficient to state a claim based upon the applicable substantive requirements of such claims. Here, GTW has not plead facts demonstrating separate and distinct legal duties regarding its statutory conversion, unjust enrichment and trespass

18

counterclaims, and, as such, has failed to state a cognizable claim for relief for these claims.

### (2)   Count IV (Tortious Interference with a Prospective Business Relationship-CR) and Count VI (Unfair Competition-CR)

GTW's remaining tort counterclaims against CR–Count IV (Tortious Interference with a Prospective Business Relationship) and Count VI (Unfair Competition)–adequately allege legal duties separate and distinct from its contractual obligations. Although the same conduct on the part of CR allegedly breached both contract and tort duties, the duties are, nevertheless, separate and distinct. For example, under tortious interference with a prospective business relationship, one has a duty to not "intentional[ly] and wrongful[ly] interfere[ ] [by] inducing or causing a breach or termination of the [business] relationship or expectancy." *PT Today, Inc. v. Comm'r of Office of Fin. & Ins. Serv.*, 715 N.W.2d 398, 422 (Mich. Ct. App. 2006). For unfair competition, one has a duty to not engage in "any conduct that is fraudulent or deceptive [which] tends to mislead the public." *ATCO Indus., Ins. v. Sentek Corp.*, Nos. 232055 & 235398, 2003 WL 21582962, at *3 (Mich. Ct. App. July 10, 2003). These duties arise notwithstanding GTW and CR's contractual duties.[9]

### 2.   Failure to State a Claim

---

[9] Application of the rule set forth in *Rinaldo's* to Count IV and Count VI is also distinguishable from the argot of cases where a party alleges a breach of contract claim for failure to perform the contract and a tort claim sounding in negligence. *See, e.g., Lanzo*, 2008 WL 1829686, at *2. Here, GTW is not alleging that CR negligently failed to perform the Trenton Steel Agreeement. Notwithstanding the contractual promise–to perform the contract, and, in performing the contract, a duty not to cross its tracks except to service Trenton Steel–CR was subject to other legal duties in tort. Specifically, as discussed above, CR was under a duty not to wrongfully interfere in GTW's prospective business relationships with third parties and it was also under a duty not to engage in fraudulent or deceptive conduct.

The Court now considers whether GTW's tort counterclaims plead sufficient facts to state a claim upon which relief may be granted.

### a. Statutory Conversion[10]

In Counts VIII and IX of GTW's Amended Counterclaim, it alleges that: (1) CR and NSR, through the actions of CR, used GTW's railway tracks to provide rail transportation services to Korneffel (Am. Countercl. ¶¶ 99, 109); (2) such use amounted to a "wrongful[] exert[ion] [of] dominion and control" over those tracks (*id.* ¶¶ 97-98, 101, 107-08, 111); and (3) CR and NSR benefitted from providing this service (*id.* ¶¶ 102, 112). Upon these allegations, GTW claims that CR and NSR are liable for statutory conversion under Mich. Comp. Laws § 600.2919a.

Section 600.2919a provides a cause of action to any "person damaged" by "[a]nother person's stealing or embezzling property or converting property to the other person's own use." Mich. Comp. Laws § 600.2919a(1)(a). In Michigan, a claim for statutory conversion will only lie where the property at issue is personal, moveable property. *Hurley v. Deutsche Bank Trust Co. Americas*, No. 07-11924, 2008 WL 373426, at *7 (E.D. Mich. Feb. 12, 2008). Michigan law, thus, does not recognize a claim for statutory conversion of real property or fixtures thereon.

In *Hurley*, this Court recognized the distinction between personal and real property for purposes of a statutory conversion claim under § 600.2919a. *Hurley*, 2008 WL 373426, at *7. That case involved a statutory conversion claim by former homeowners against a bank

---

[10] This counterclaim was dismissed as to Plaintiff CR (Count VIII) under *Rinaldo's* rule above, and, as discussed below, is also dismissed as to Plaintiff NSR (Count IX) for failure to state a claim.

that foreclosed on their home for "numerous items of personal property, including out buildings, hunting blinds, floating docks, fishing stands, and a new double-wide." *Id*. The defendants argued that "conversion only applies to personal property," the plaintiffs conceded, and this Court agreed. *Id*. (quoting *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999)).

Although GTW acknowledges that this Court has previously recognized that a statutory conversion claim relates only to personal property, it respectfully disagrees with that finding. GTW argues that the Legislature, in enacting § 600.2919a(1)(a), specifically intended to include both real and personal property within the meaning of "property." GTW contends that when the Michigan Legislature drafted this statute, "the Legislature is deemed to [have] act[ed] with an understanding of [the] common law in existence before the legislation was enacted." *Walters v. Leech*, 761 N.W.2d 143, 146 (Mich. Ct. App. 2008); *see also Wold Architects & Engineers v. Strat*, 713 N.W.2d 750, 756 (Mich. 2006) ("The Legislature is presumed to know the existence of the common law when it acts."). GTW avers that absent from § 600.2919a(1)(a) is a requirement that the property be "personal," as originally required under common law.[11] GTW concludes that, in omitting the word "personal," the Legislature intended to broaden the definition of "property" to include all property–both real and personal. GTW, however, offers no authority to support its conclusion that § 600.2919a(1)(a) also applies to real property. This Court maintains its

---

[11] At common law, a tort conversion claim could be brought for "any distinct act of domain wrongfully exerted over another's *personal property* in denial of or inconsistent with the rights therein." *Head*, 593 N.W.2d at 603 (emphasis added). Statutory conversion consists of "[a]nother person's . . . converting *property* to the other person's own use." Mich. Comp. Laws § 600.2919a(1)(a) (emphasis added).

21

prior finding–statutory conversion under Mich. Comp. Laws "§ 600.2919a(1)(a) relates only to personal property." *Hurley*, 2008 WL 373426, at *7.

In *Hurley*, this Court also noted that "[p]ersonal property can become part of the real property if it is a fixture," and applied a three-part test to determine if property is a fixture: "[p]roperty is considered to be a fixture if (1) it is annexed to the realty, (2) its adaptation or application to the realty being used is appropriate, and (3) there is an intention to make the property a permanent accession to the realty." *Id.* (quoting *Ottaco v. Gauze*, 574 N.W.2d 393, 396 (Mich. Ct. App. 1998)). Having concluded on the facts of that case that "there was no real question that [p]laintiffs' personal property meets the first two elements of a fixture ... [t]he focus, then, is whether [p]laintiffs intended to make the property a permanent accession." *Hurley*, 2008 WL 373426, at *7.

Here, like *Hurley*, there is no real dispute that the railway tracks meet the first two elements of a fixture. The parties, however, are in disagreement as to whether the property at issue–GTW's Industrial Service Track, Spur Track and other tracks that CR crossed–meet the third element. Although Plaintiffs contend that railway tracks are undoubtedly fixtures, GTW argues that it intended for its railway tracks to be personal property.[12] GTW, however, has not plead any facts regarding its intention to make the tracks a permanent accession to the realty. Apart from its argument in response to

---

[12] *Compare In the Matter of Morgan's Appeal v. Proceedings of the Chicago & Northeastern R.R. Co.*, 1878 WL 7131, at *1 (Mich. Nov. 21, 1878) ("the superstructure of a railroad is a fixture"), and *Galveston R.R. v. Cowdrey*, 78 U.S. 459, 482 (1870) ("[t]he rails put down on the company's road become a part of the road"), *with Oman v. Bedford-Bowling Green Stone Co.*, 134 F. 64, 68 (6th Cir. 1905) (recognizing that the "rails, ties, etc. constituting the tracks" were not "so immovably attached to the soil as to put it beyond the power of the [company] to treat them as it might see fit. It has the right to continue to use them as tracks, or remove them as personal property").

Plaintiffs' motion to dismiss, the Amended Complaint is devoid of any allegation that there was an intention to make the property a permanent accession to the realty. GTW has not plead "enough in the way of factual allegation 'to raise a right of relief above the speculative level[.]'" *Twombly*, 127 S. Ct. at 1964-65.

GTW also argues that the determination of whether there is an intention to make the property a permanent accession to the realty is a fact based inquiry, and that such a determination is one that is not properly decided by a Rule 12(b)(6) motion. *See Jenkins v. Mercantile Mortg. Co.*, 231 F.Supp.2d 737, 752 (N.D. Ill. 2002) ("Intent is a question of fact not appropriate in a [12(b)(6)] motion to dismiss."). *See Wayne Cty. v. Brittton*, 563 N.W.2d 674, 680 (Mich. 1997) ("This Court examines the objective visible facts to determine whether intention to make the article a permanent accession to the realty exists. The surrounding circumstances determine the intent of the party making the annexation, not the annexor's secret subjective intent. Intent may be inferred from the nature of the article affixed, the purpose for which it was affixed, and the manner of annexation.") (internal citations omitted). This Court in *Hurly* decided the question of intent upon a Rule 56(c) summary judgment motion. *Hurley*, 2008 WL 373426, at *7 (deciding whether the property at issue was subject to a statutory conversion claim, the court held in the negative because the property "was not intended to be permanent [and, thus,] it was not a fixture and [could not] be considered part of the real estate"). This Court need not address the issue of intent at this time. As discussed, GTW has failed to plead facts sufficient to state a claim for statutory conversion under Mich. Comp. Laws § 600.2919a, and, as such, dismissal of this counterclaim is appropriate under Fed. R. Civ. P. 12(b)(6).

### b. Unjust Enrichment[13]

Under Michigan law, a claim for unjust enrichment includes two elements: "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Dumas v. Auto Club Ins. Ass'n.*, 473 N.W.2d 652, 663 (Mich. 1991); *see also Iverson Indus., Inc. v. Metal Mgmt. Ohio, Inc.*, 525 F. Supp. 2d 911, 921-22 (E.D. Mich. 2007) (quoting *Dumas*).

In Count XI, GTW alleges that: (1) NSR, through CR's illegal and unauthorized acts, received a benefit from Korneffel in the form of payment for "service fees and costs" for CR's provision of service to Korneffel (Am. Countercl. ¶¶ 122-123); and (2) it would be inequitable for NSR to retain those payments (*id.* ¶ 124). Count XI, on its face, pleads sufficient facts to state a claim of unjust enrichment.

Plaintiffs, however, argue that, under Michigan law, no claim for unjust enrichment may lie where an express contract exists between the parties concerning the same subject matter as the unjust enrichment claim. *See Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 730 (6th Cir. 2006); *see also Erickson's Flooring & Supply Co., Inc. v. Tembec, Inc.*, No. 06-1277, 2007 WL 62609, at *5-6 (6th Cir. Jan. 9, 2007) (affirming summary judgment on unjust enrichment claim where oral contract existed); *Iverson Indus.*, 525 F. Supp. 2d at 922 (noting that an unjust enrichment claim "cannot be brought if there is a contract covering the subject matter"). Plaintiffs contend that GTW, by its own averments, admits that two contracts–namely, the 1897 Agreement and the Trenton Steel Agreement–govern the question of whether CR has a right to provide rail transportation

---

[13] This counterclaim was dismissed as to Plaintiff CR (Count X) under *Rinaldo's* rule above, however, as to Plaintiff NSR, Count XI will survive Plaintiffs' motion to dismiss.

24

services to Korneffel. (Am. Countercl. ¶¶ 27-51.) Plaintiffs conclude that the presence of these contracts preclude GTW's unjust enrichment counterclaim.

In so concluding, Plaintiffs rely on *Johnson Controls*. In that case the plaintiff, a manufacturer of auto parts, sued its supplier, claiming that it had been overcharged for certain costs related to the packaging of parts. *Johnson Controls*, 459 F.3d at 720-22. In addition to asserting a claim for breach of contract, plaintiff sought to recover the overcharges on the basis of unjust enrichment. *Id.* at 722. The district court, concluding that the existence of an express contract between the parties precluded an unjust enrichment claim, entered judgment for the defendant, and the plaintiff appealed. *Id.* at 730. The Sixth Circuit affirmed, stating: "[i]n order to grant relief on the basis of unjust enrichment, the court must imply a contract between the parties; '[h]owever, a contract will be implied only if there is no express contract covering the same subject matter.'" *Id.* (quoting *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. App. 2003)).

In this matter, Plaintiffs' reliance on *Johnson Controls* is unjustified. The precise holding Plaintiffs rely on was procedurally based on post-trial motions. Here, GTW faces a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Although this Court does not take issue with the holding in *Johnson Controls*, it is not applicable to the case at hand. As discussed immediately below, GTW may, under appropriate circumstances, assert inconsistent claims under Fed. R. Civ. P. 8(d) sufficient to withstand Plaintiffs' motion to dismiss.

GTW may assert inconsistent claims under Fed. R. Civ. P. 8(d): it may plead claims in both contract and tort even though the contract and tort claims may be inconsistent. Indeed, in *Siegel-Robert, Inc. v. Mayco Int'l, LLC*, No. 07-13191, 2007 WL 3173365, at *1 (E.D. Mich. Oct. 29, 2007), the court addressed the same argument that Plaintiffs assert

in this matter. There, Siegel-Robert, Inc. (SRA) filed a lawsuit against Mayco International, LLC (Mayco). In response, Mayco asserted both breach of contract and unjust enrichment in its counterclaim. SRA filed a motion to dismiss Mayco's counterclaim, arguing that "Mayco admits that it has an express contract with SRA" and, thus, "Mayco's counterclaim must be dismissed because [the] quasi-contractual . . . claims . . . cannot be maintained when an express contract exists." *Id.* at *1. In response, Mayco argued–as GTW does here–that the Federal Rules of Civil Procedure "allow[ ] a party to state as many separate claims as the party may have regardless of consistency" and "allow[ ] a party to set forth two or more statements of a claim, alternatively or hypothetically, either in one count or in separate counts." *Id.* The court agreed with Mayco and held: "[w]hile it is true that Mayco will not be able to recover damages on both its contract and quasi-contractual theories, . . . Mayco has pleaded these alternative or inconsistent theories in accordance with [the Federal Rules of Civil Procedure]." *Id.* Thus, SRA's Rule 12(b)(6) motion was denied. *Id. See also Truck Country of Iowa, Inc. v. R & J Truck Sales, LLC*, No. 05-71848, 2008 WL 2026141, at *9 (E.D. Mich. May 9, 2008) ("under Fed. R. Civ. P. 8(e)(2) a party may plead a contract claim and an alternative claim for unjust enrichment.").

Here, notwithstanding the existence of a contract, the pleadings sufficiently state an alternative claim for unjust enrichment in Count XI. As in *Siegel-Robert*, Plaintiffs' 12(b)(6) motion to dismiss GTW's unjust enrichment counterclaim against NSR, on the sole basis that an express contract covering the same subject matter exists, must be denied because GTW may plead inconsistent claims, and it has done so sufficiently to state a claim for relief.

26

Application of Fed. R. Civ. P. 8(d) to the unjust enrichment counterclaim against Plaintiff NSR is distinguishable from its prior application in this Opinion regarding separate and distinct legal duties. GTW has plead sufficient facts to state a claim for unjust enrichment against Plaintiff NSR. GTW, on the other hand, did not plead sufficient facts to demonstrate the substantive requirement of separate legal duties under tort and contract to state a claim for relief against Plaintiff CR, as discussed above.

### c. Unfair Competition

In Counts VI and VII, GTW alleges that CR and NSR engaged in unfair competition by providing rail transportation services to Korneffel. (Am. Countercl. ¶¶ 78-95.) Specifically, GTW alleges that: (1) CR and NSR intentionally induced Korneffel into believing that CR owned or had the right to use GTW's tracks (*id.* ¶¶ 79, 81, 88, 90); (2) CR and NSR knew or should have known that CR had no such right (*id.* ¶¶ 80, 89); (3) Korneffel reasonably relied upon the impression allegedly created by CR and NSR (*id.* ¶¶ 82-83, 91-92); (4) the actions of CR and NSR were unethical, fraudulent, and deceptive (*id.* ¶¶ 85, 94); and (5) GTW incurred damages as a result (*id.* ¶¶ 86, 95). Plaintiffs, however, assert that none of this conduct, even if true, gives rise to an unfair competition claim under Michigan law.

In Michigan, unfair competition "prohibits unfair and unethical trade practices that are harmful to one's competitors or to the general public." *ATCO Indus., Ins. v. Sentek Corp.*, Nos. 232055 & 235398, 2003 WL 21582962, at *3 (Mich. Ct. App. July 10, 2003). Unfair competition "*ordinarily* consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing

27

the purchase of his wares and thereby obtaining for himself the benefits properly belonging

to his competitor." *Clipper Belt Lacer Co. v. Detroit Belt Lacer Co.*, 194 N.W. 125, 128

(Mich. 1923) (emphasis added). This definition embodies the principles that "no one shall

by imitation or unfair device induce the public to believe that the goods he offers for sale

are the goods of another," and that "no man has a right to palm off his own goods as the

goods of a rival trader." *Schwannecke v. Genesee Coal & Ice Co.*, 247 N.W. 761, 762

(Mich. 1933).

Relying upon this definition, Plaintiffs argue that unfair competition claims in Michigan

are strictly limited to issues concerning deception as to the identity or origin of goods. *See*

*also Marion Labs., Inc. v. Michigan Pharmacal Corp.*, 338 F.Supp. 762, 767 (E.D. Mich.

1972) ("Decisions ... involving claims of unfair competition have been limited *almost*

*exclusively* to the protection of names of corporations, buildings, and other businesses.")

(emphasis added). Plaintiffs, therefore, contend that GTW's unfair competition

counterclaims must be dismissed because GTW failed to allege in its pleadings that either

CR or NSR simulated its name, symbols, or devises, or that CR or NSR substituted their

goods for those of GTW.

This Court, however, disagrees. Plaintiffs' overly narrow interpretation of Michigan

common law unfair competition claims cannot be sustained. *See, e.g.*, *Donnelly Corp. v.*

*Reitter & Schefenacher USA Ltd. Partnership*, No. 1:00-CV-751, 2002 WL 31418042, at

*2-4 (W.D. Mich. Aug. 13, 2002) (denying plaintiffs motion to dismiss defendant's unfair

competition counterclaim on similar grounds). The "gist of [an] ... unfair competition case

... is that the public is so misled that the plaintiff loses some trade by reason of the

defendant's deception." *Revlon, Inc. v. Regal Pharmacy, Inc.*, 29 F.R.D. 169, 174 (E.D.

28

Mich. 1961). "Each unfair competition case ... is based upon the principles of common business integrity. The term unfair competition may encompass *any conduct* that is fraudulent or deceptive and tends to mislead the public." *ATCO*, 2003 WL 21582962, at *3 (internal quotations and citations omitted) (emphasis added); *see also Veteran Med. Prods., Inc. v. Bionix Devel. Corp.*, No. 05-655, 2009 WL 891724, at *7 (W.D. Mich. March 31, 2009). Moreover, none of the cases cited by Plaintiffs "conclude that Michigan's common law absolutely excludes a claim based on" GTW's allegations. *Donnelly*, 2002 WL 31418042, at *3.

> There are many ways, other than by interference with contract, of harassing, interfering with, and obstructing a competitor in such a manner as to amount to unfair competition, in the broadest sense of the term. The business of another may be unlawfully obtained by harassing his customers and salesmen, just as effectively as by passing off his goods as those of another.

*Att'y Gen. v. Nat'l Cash Register Co.*, 148 N.W. 420, 428 (Mich. 1914). Regarding the scope of unfair competition claims,[14] the Michigan Supreme Court stated in *Clipper*, that

> [t]here is no hard and fast rule by which it can be determined when the court will interfere by injunction to prevent what is practically a fraud upon a person engaged in business by unfair methods of business. Each case must depend upon its own facts, but where it is clearly established that an attempt is being made by one person to get the business of another by any means that involves fraud or deceit, a court of equity will protect an honest trader and restrain a dishonest one from carrying out his scheme.

*Clipper*, 194 N.W. at 128. This statement leads the Court to believe that GTW's allegations state a cognizable claim under Michigan unfair competition law. *See, e.g.*, *Donnelly*, 2002

---

[14] GTW also acknowledges that other jurisdictions have recognized that an action for "unfair competition" is "the umbrella for all ... causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974).

WL 31418042, at *4. Accordingly, Plaintiffs' motion to dismiss the unfair competition counterclaims is denied.

### d. Tortious Interference with Business Relationship

GTW's tortious interference with business relationship counterclaims focus on the period from December 2006 through May 2008, which is the period that CR allegedly provided rail transportation services to Korneffel under the NSR-Korneffel Contract. Since May 2008, GTW has been providing Korneffel with those services. GTW's tortious interference counterclaims are premised on the allegation that, in constructing its railway tracks, it fully expected to develop business relationships with entities located adjacent to those tracks. GTW reasons that because its tracks are the only tracks adjacent to Korneffel and had CR not provided rail transportation services to Korneffel, then GTW would have necessarily been the only railroad entity that would have been able to provide such services.

In Michigan, to state a claim for interference with a prospective business relationship, four elements must be plead: (1) a reasonable expectancy of a business relationship with a third party; (2) knowledge by the defendant of that expectancy; (3) intentional and improper interference with that expectancy; and (4) resultant damages. *See Mino v. Clio Sch. District*, 661 N.W.2d 586, 597-98 (Mich. Ct. App. 2003).

In Counts IV and V, GTW alleges that: (1) it had an expectation that it would develop a relationship with Korneffel (Am. Countercl. ¶ 54, 67); (2) CR and NSR knew or should have known of this expectancy (*id.* ¶¶ 56, 69); (3) CR and NSR intentionally and improperly interfered with that expectancy (*id.* ¶¶ 57, 70); and (4) GTW suffered damages as a result (*id.* ¶¶ 64, 77).

30

Plaintiffs, in support of its motion to dismiss the tortious interference with business relationship counterclaims, raise two arguments. First, Plaintiffs argue that GTW has failed to allege facts that would plausibly show a expectancy of doing business with Korneffel. Second, Plaintiffs contend that GTW has failed to allege facts that would show that the actions of CR and NSR amounted to intentional and improper interference.

### (1)   GTW's Expectancy of a Business Relationship with Korneffel

Plaintiffs concede that GTW has alleged a business expectancy. Plaintiffs argue, however, that the expectancy alleged is insufficient to state a claim for relief. Specifically, Plaintiffs argue that the only expectancy alleged by GTW is the physical access to its tracks: but for the provision of service to Korneffel by CR and NSR prior to May 2008, those services would have been provided by GTW. Plaintiffs then conclude–without providing authority in support–that physical access alone is not a cognizable business expectancy. This Court disagrees.

This Court finds that GTW has alleged facts that would plausibly show an expectancy of doing business with Korneffel prior to May 2008. GTW, in addition to alleging that it is now meeting Korneffel's rail transportation needs, alleges that:

> [l]ong before the establishment of the Korneffel facility, [GTW] had constructed the Spur Track from its Industrial Service Track which in part is located adjacent to the property now housing the Korneffel facility to provide rail freight services to different businesses located to the southeast of its Industrial Service Track and with the expectation that it would develop business relationships with other businesses, such as Korneffel, that would locate facilities along or in close proximity to its Spur Track and/or Industrial Service Track . . . . Through its construction of the Spur Track and Industrial Service Track, [GTW] fully expected to develop further rail freight transportation business relationships with other entities, such as Korneffel.

31

(Am. Countercl. ¶¶ 54-55, 67-68.) It is not disputed that the only tracks physically able to service Korneffel are those tracks constructed, owned, and operated by GTW. But for GTW's tracks, Korneffel could not obtain rail transportation services.

Plaintiffs also argue that the alleged business expectancy was not reasonable–contending that the only fact GTW alleges in support of the reasonableness is that, in preventing CR and NSR from providing services to Korneffel, it "has met Korneffel's needs." (Am. Countercl. ¶¶ 62, 75.) To support a claim for interference with a business expectancy, however, a claimant must not only plead a frustrated business expectancy, but that such expectancy was "a *reasonable* likelihood or probability, not mere wishful thinking." *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 408 (6th Cir. 1999) (quoting *Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341, 348 (Mich. Ct. App. 1984)) (emphasis added) (holding that the mere fact that the plaintiff subsequently performed services for the third party is not enough to show that it had a reasonable expectancy). GTW contends that the "reasonableness" of its purported business expectancy is a question of fact that is not properly decided on a Fed. R. Civ. P. 12(b)(6) motion. This Court agrees: where the facts plead sufficiently state a claim for relief, the issue of reasonableness is a matter appropriately reserved for summary judgment[15] or trail.

### (2)   Plaintiffs' Intentional and Improper Interference with that Expectancy

Next, Plaintiffs argue that GTW has failed to plead that CR or NSR engaged in intentional and improper interference with its business expectancy. To state a claim for

---

[15] The authority Plaintiffs rely on, *Lakian*, was decided on a motion for summary judgment. *See Lakian*, 188 F.3d at 408.

tortious interference with business expectancy, the alleged interference must be both intentional and improper. *See Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913, 921 (6th Cir. 2000).

Plaintiffs contend that although GTW alleges that Plaintiffs intentionally interfered with its expectancy, it alleges elsewhere in its Amended Counterclaim that the Plaintiffs' motive was to have Korneffel "agree to . . . [the Plaintiffs'] providing of rail freight transportation services to it.'" (Am. Countercl. ¶¶ 81, 90.) Plaintiffs conclude that by GTW's own admission, CR's actions were motivated by legitimate business reasons and, therefore, cannot support these counterclaims. *See Mino v. Clio Sch. Dist.*, 661 N.W.2d 586, 597-98 (Mich. Ct. App. 2003) ("Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference.").

Plaintiffs, in forming this argument, quote from separate counts in GTW's Amended Counterclaim–unfair competition counterclaims and tortious interference with prospective business relationship counterclaims. As stated above, GTW may plead inconsistent claims and legal theories in the alternative under Fed. R. Civ. P. 8(d). The fact that GTW alleged, in a separate count, that Plaintiffs attempted to have Korneffel agree to CR's providing of rail transportation services will not foreclose GTW's tortious interference counterclaim.

Plaintiffs also argue that because GTW did not allege that Plaintiffs acted with malice or that Plaintiffs' acts were "wrongful per se," this Court should dismiss GTW's tortious interference counterclaim. A "wrongful per se" act is one that is "inherently wrongful or an act that can never be justified under any circumstances." *Patillo v. Equitable Life Assurance Soc'y*, 502 N.W.2d 696, 700 (Mich. Ct. App. 1992). Malice, however, "is the intentional doing of a wrongful act without justification or excuse." *Feldman v. Green*, 360 N.W.2d 881,

33

887 n.1 (Mich. Ct. App. 1984). "And a 'wrongful act' is any act which in the ordinary course will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right." *Id.*

The mere fact that GTW did not use the phrase "wrongful per se" or the word "malice" in its Amended Counterclaim does not demand dismissal. GTW alleged facts to satisfy the aforesaid definitions. *See, e.g.*, Am. Countercl. ¶¶ 57, 59, 70, 72 ("[Plaintiffs] intentionally, improperly and illegally interfered with [GTW's] business expectation . . . by inducing Korneffel to obtain its rail freight transportation services from [them] knowing that in order to do so [they] would have to engage in the illegal use of [GTW's] tracks," i.e., "without any right or legal authority."). Accordingly, this Court denies Plaintiffs' motion to dismiss GTW's tortious interference counterclaims.

### B. Declaratory Judgment Counterclaims

In Counts I and II, GTW seeks declaratory judgment against CR with respect to the 1897 Agreement and the Trenton Steel Agreement, respectively. In those counts, GTW also seeks a determination that CR and NSR is liable for damages for having allegedly breached those agreements. Plaintiffs contend that a determination of liability for damages is inappropriate in a declaratory judgment claim.

Plaintiffs contention, however, is not correct. Courts recognize that "money damages may, of course, be awarded in an action for declaratory judgment." *Hudson v. Hardy*, 424 F.2d 854, 855 (D.C. Cir. 1970). *See also Beacon Constr. Co., Inc. v. Matco Elec. Co., Inc.*, 521 F.2d 392, 400 (2nd Cir. 1975) ("It is well settled that 'further relief' may include an award for damages.").Specifically, 28 U.S.C. § 2202 provides:

34

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. § 2202. Additionally, damages are not the only relief sought by GTW under Counts I and II. Rather, GTW also seeks, *inter alia*, a declaration that CR does not have a right to cross GTW's tracks under the respective contracts at issue to provide rail transportation services to Korneffel. (Am. Compl. ¶¶ 36, 46.) Accordingly, Plaintiffs' motion to dismiss GTW's declaratory judgment counterclaims is denied.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion to dismiss, pursuant to Rule 12(b)(6), is GRANTED IN PART and DENIED IN PART. Plaintiffs' motion to dismiss GTW's counterclaims is GRANTED as to: Count VIII (Statutory Conversion-CR) and Count IX (Statutory Conversion-NSR), Count X (Unjust Enrichment-CR), and Count XII (Trespass-CR). Plaintiffs' motion to dismiss GTW's counterclaims is DENIED as to: Count I (Declaratory Judgment) and Count II (Declaratory Judgment), Count IV (Interference With Prospective Business Relationship-CR) and Count V (Interference With Prospective Business Relationship-NSR), Count VI (Unfair Competition-CR) and Count VII (Unfair Competition-NSR), and Count XI (Unjust Enrichment-NSR).


                    s/Nancy G. Edmunds
                    Nancy G. Edmunds
                    United States District Judge

Dated: October 22, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 22, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager