UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONSOLIDATED RAIL CORPORATION
and NORFOLK SOUTHERN RAILROAD
COMPANY,

    Plaintiffs/Counter-Defendants,

v.                                                   Case No. 09-cv-10179

GRAND TRUNK WESTERN RAILROAD       Honorable Nancy G. Edmunds
COMPANY,

    Defendant/Counter-Plaintiff/Third-
    Party Plaintiff,

v.

CSX TRANSPORTATION, INC.,

    Third-Party Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [171]**

This matter comes before the Court on Defendant's motion for summary judgment on Plaintiffs' claim that Defendant breached the 1996 Trackage Rights Agreement. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

**I.    Facts**

    **A.  Third Amended Complaint**

1

On January 19, 2012, this Court granted Plaintiffs' motion for leave to file a Third-Amended Complaint. The Third Amended Complaint alleged a new breach of contract claim against Defendant, for breaching the 1996 Trackage Rights Agreement ("TRA"). Defendant opposed this motion, arguing that Plaintiffs failed to allege that Conrail had any damages and Norfolk Southern did not have standing. In granting Plaintiffs' motion to amend the complaint, this Court recognized that Count V of the Third Amended Complaint reads, "Conrail and Norfolk Southern have suffered monetary damages in the form of increased expenses, lost opportunities and lost revenues as a result of [Defendant's] failure to uphold its obligations under the [TRA]." (Third Am. Compl. ¶ 90.) On January 17, 2012, Plaintiffs presented the Shared Assets Area Operating Agreement ("SAAOA") for Detroit between Conrail, Norfolk Southern, and CSX to the Court for the first time. The Court relied on the SAAOA, which provides that Conrail will bill Norfolk Southern and CSX each month for 102% of the amount of each reimburseable expense. Conrail effectively acquires a 2% profit on any expenses it incurs and later bills to Norfolk Southern. This Court determined Plaintiffs' allegation of Conrail's loss of the 2% profit was enough to state a claim and granted Plaintiffs leave to amend.

### B. Evidence of Conrail's Damages During Discovery

Plaintiffs' First Amended Complaint and Second Amended Complaint alleged that only Norfolk Southern suffered damages as a result of the claims pled therein (*see* Second Amended Complaint, ¶¶ 58, 75, and 82). Despite the fact that Plaintiffs did not originally allege that Conrail suffered any damages, Defendant sought discovery on any possible claim for damages incurred by either Conrail or Norfolk Southern.

2

On May 8, 2009, Plaintiffs filed their initial disclosures, which indicates, "Conrail seeks damages representing the losses incurred as a result of [Defendant's] refusal to allow Conrail access to the tracks at issue to service Korneffel. At this time, Conrail is not able to make the calculation associated with these damages and will supplement these disclosures accordingly." (Def. Mot. Ex. 5.) Defendant's first set of requests for production of documents and materials included "Documents or materials relating to any and all damages claimed to have been suffered or which you claim will be suffered by you in your Complaint." (Def. Mot. Ex. 4.) On June 26, 2009, Plaintiffs objected to this request as "premature and unduly burdensome." (*Id.*) Defendant claims that Plaintiffs never supplemented either of these responses, despite their obligation to do so under Rule 26(e)(1)(A).

In October 18, 2009, Defendant sent out a Rule 30(b)(6) notice for witness(es) to testify regarding "[t]he basis for computation of any and all damages sought by Conrail." (Def. Mot. Ex. 1, ¶ 58.) Plaintiffs designated James Schaaf, Group Vice President of Metals for Norfolk Southern, as their 30(b)(6) witness as to damages for Norfolk Southern and Conrail. Schaaf testified that he understood that he would be testifying regarding damages that were allegedly incurred by Norfolk Southern and Conrail. (Schaaf Dep. 98:19-99:1, April 21, 2010.)

Schaaf testified that Conrail is not a commercial entity, is not party to any agreements with customers, and all commercial activities relating to any customer is handled by Norfolk Southern or CSX. (James Schaaf Dep. 48:4-10; 51:9-11, Aug. 3, 2010.) At Schaaf's deposition, Plaintiffs produced a spreadsheet entitled "Estimated NS Damages." Furthermore, Schaaf testified that all the loss he calculated was for Norfolk

3

Southern and that Conrail really suffered no damages because it was acting as Norfolk Southern's agent. (Schaaf Dep. 283:15-284:5, April 21, 2010; Schaaf Dep. 70:11-20, Aug. 3, 2010.) Schaaf also testified:

> Q. So in effect, Conrail has suffered no damages in this, but you have suffered, that being you, NS has suffered, correct? That is all I'm trying to get at, is that fair to say, because ultimately you are responsible?
> A. I'm not clear that I can fully answer that question as to whether or not Conrail had damages and you may want to ask a Conrail person that question, but I -- but I have tried to the best of my ability to explain to you that any of the expenses that are incurred with respect to these shipments, that we as the owner will bore those expenses on behalf of our agent.
> 
> \* \* \*
> 
> A. I'm saying that the damages that have been presented for Norfolk Southern are those which are listed here.
> Q. And you don't have any knowledge of Conrail damages, correct?
> A. Again, I will tell you, no, I do not.

(Schaaf Dep. 71:17-73:2, Aug. 3, 2010.)

### C. Norfolk Southern Standing

In 1996, at the time Conrail and Defendant entered into the TRA, Conrail was still an independent commercial entity in direct competition with Norfolk Southern. In June 1997, Norfolk Southern, Conrail, and CSX submitted their merger agreement to the Surface Transportation Board ("STB") for approval. The STB is an economic regulatory agency, created by Congress to resolve rate and service disputes and review mergers in the railroad industry.

On July 20, 1998, the STB, in its Decision No. 89, "approv[ed] applicants' request to override antiassignment and other similar clauses in Conrail's Trackage Agreements."[1] ("Decision 89")  The STB further stated:

> [Norfolk Southern] shall have the right to operate and use the . . . Shared Assets . . . including those presently operated by [Conrail] under trackage rights or leases . . . as fully as [Conrail] itself had possessed the right to use them, notwithstanding any provision of law, agreement, order, document, or otherwise, purporting to limit or prohibit [Conrail]'s unilateral assignment of its operating rights to another person or persons, or purporting to affect those rights in the case of a change of control.

(*Id.* at 168.)  The TRA in this case is a joint facility contract in the Detroit Shared Assets Area, entered into on May 1, 1996 and is therefore, covered by this STB Decision.

**II.   Standard**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a

---

[1] There was one exception to this blanket override, but it does not relate to the TRA at issue in this case.

genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. Analysis

#### A. Conrail Damages

Rule 26 provides that a party must automatically disclose:

> A computation of each category of damages claims by the disclosing party—who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii). Discovery disclosures must be supplemented as new information comes to light. Fed. R. Civ. P. 26(e).

If a party fails to disclose such information during discovery, it may not use that information against the opposing party at trial, unless the failure to disclose was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *See also Park West Galleries, Inc. v. Global Fine Art Registry, LLC*, No. 08-cv-12247, 2008 U.S. Dist. LEXIS 22872, at *17 (E.D. Mich. March 12, 2010) (Zatkoff, J.) (granting a motion in limine to

6

exclude evidence of damages that were not disclosed until well after the time of discovery and the lack of disclosure was neither substantially justified nor harmless); *Fairlane Car Wash, Inc., v. PJJ Enterprises, LLC*, No. 07-cv-10165, 2008 U.S. Dist. LEXIS 33576 (E.D. Mich April 24, 2008) (Cleland, J.) (granting the defendant's motion to preclude the plaintiffs' claim for damages where the plaintiffs waited until three months after discovery to claim a certain category of damages and never provided the defendant with the necessary information and evidence in support of such damages or an opportunity to access the same).

It is well-established that an organization served with a Rule 30(b)(6) deposition notice is obligated to produce a witness knowledgeable about the subjects in the notice and to prepare that witness to testify not just to his own knowledge, but the corporation's knowledge. *Prosonic Corp. v. Stafford*, No. 07-cv-0803, 2008 U.S. Dist. LEXIS 80778 (S.D. Ohio June 2, 2008).

> [I]f a party designates someone to testify on that party's behalf on the issue of evidence possessed by the party to support its claims or defenses, and the witness either disclaims any knowledge of such evidence or provides a limited amount of testimony on the subject, the organization may not use any evidence beyond that at trial (unless, of course, it has provided it in another way such as through initial disclosures or discovery responses and the testimony at the 30(b)(6) deposition is not inconsistent with those other disclosures).

*Id.* at *6-7. Damages are an element of a breach of contract claim, and if there are no damages, then there can be no breach of contract action and granting summary disposition is appropriate. *New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 281 Mich. App. 63, 69-70 (2008) (citations omitted).

In this case, Plaintiffs did not present any damages for Conrail until January 17, 2012, seven months after the close of discovery. Plaintiffs allege that Conrail's damages were disclosed in Schaaf's depositions. Specifically, they contend that Conrail's operating expenses are principally fixed costs and Conrail was harmed by Defendant's breach of the TRA because Conrail moved fewer cars, which increased Conrail's fixed costs per car by reducing its overall net operating revenue. The section of Schaaf's deposition that Plaintiffs reference, however, reads:

> Ultimately all expenses that are incurred by Conrail go to their owners, in which [NS is] one. So whatever damages or increased cost that they incurred, go back to Norfolk Southern as their owner. They are an operating agent on our behalf. Expenses that they incur as the normal course of business go back to their owners based on the business that they are doing for us. So that is in fact any damages that were incurred would be incurred by Norfolk Southern and our agent, and we are responsible for our agent. They are acting on our behalf.

(Schaaf Dep. 68:22-69:8, Aug. 3, 2010.)

Plaintiffs assert that because Conrail is an agent of Norfolk Southern that it is damaged because "if the principal is damaged through the use of an agent, the agent is damaged as well." (Pls. Resp. 6.) Plaintiffs, however, do not cite a single case for this assertion and do not offer any evidence of how Conrail has been damaged, except for the 2% markup on expenses as provided for in the SAAOA.

Plaintiffs further argue that even if Conrail cannot demonstrate damages, that it should be able to sustain a breach of contract claim on nominal damages. Plaintiffs cite to STB Decision 89 for this claim, but the pages to which they refer have nothing to do with Plaintiffs' statement in their brief.

8

The only support for Conrail's alleged damages, then, appears to be the SAAOA. Defendant states that the first time it saw the SAAOA was seven months after the close of discovery, as an exhibit to Plaintiffs' reply to their motion for Leave to File a Third Amended Complaint. Defendant argues that because Plaintiffs never produced the SAAOA to Defendant during discovery, it cannot now be considered as evidence of damages. Plaintiffs contend, however, that the SAAOA is a public record and Defendant had access to it since 1999. Plaintiffs further argue that the fact that Defendant never asked Schaaf or any other witness specifically about the SAAOA does not preclude Conrail from eliciting such testimony at trial, since it was clear that there was an operating and/or ownership agreement between Norfolk Southern and Conrail and Defendant was free to inquire into its terms.

In this case, Plaintiffs failed to disclose any damages sustained by Conrail during the discovery period. They did not comply with Rule 26, failing to disclose their damages computations, and they did not supplement their initial lack of disclosure with those figures later on. Plaintiffs presented a 30(b)(6) witness who disclaimed any knowledge of damages on behalf of Conrail, on whose behalf he was designated to testify about damages. It was not until two weeks before the scheduled trial, and seven months after the close of discovery, that Plaintiffs presented the SAAOA as a basis for Conrail's damages.

In their response, Plaintiffs do not cite any authority, nor do they respond to the Rules of Civil Procedure and cases cited by Defendant. Instead, Plaintiffs argue that Defendant's motion for summary judgment should be denied because it merely repeats arguments previously considered and rejected by this Court and is essentially a motion

9

to reconsider.  Plaintiffs are correct that Defendant presents the same arguments in this motion as it did in its opposition to Plaintiffs' motion for leave to amend.  Plaintiffs do not take into consideration, however, the different standards a court utilizes in deciding whether to granting leave to amend as opposed to whether to grant summary judgment.

While this Court allowed Plaintiffs to file a Third-Amended Complaint, the Court needed to find only that Plaintiffs alleged damages and stated a claim upon which relief could be granted.  In deciding this motion for summary judgment, the Court now assess the evidence that would be admissible and determines if there is an issue of material fact.  Based on the fact that Plaintiffs failed to disclose any evidence of damages on behalf of Conrail until the eve of trial, this Court precludes Plaintiffs from presenting that the SAAOA as evidence of Conrail's damages.

Even if the SAAOA is a public document, Plaintiffs failed to comply with their discovery obligations and never disclosed their alleged damages.  This Court will not penalize Defendant because it did not go on a fishing expedition to make Plaintiffs' damages claims for them.  Plaintiffs have failed to present any evidence of damages in a timely fashion, and accordingly, Defendant's motion for summary judgment as to Conrail's claim for breach of contract is GRANTED.

### B.     Norfolk Southern Standing

Defendant argues that Norfolk Southern has no standing to claim a breach of contract under the TRA because (1) Norfolk Southern is neither a party to nor an intended beneficiary of the TRA and (2) Decision 89 does not entitle Norfolk Southern to claim contract damages in Conrail's stead.  Plaintiffs contend, however, that Norfolk Southern has standing to enforce the TRA as provided under the SAAOA and Decision

10

89 and under Section 15 of the TRA itself.  Plaintiffs have never claimed and do not claim now that Norfolk Southern was a party to the TRA or an intended third-party beneficiary and this Court agrees that Norfolk Southern was neither of those things.

### 1.    Decision 89 and the SAAOA

Defendant argues that Decision 89 does not apply to the facts of this case because the rights granted in Decision 89 are subject to the SAAOA, which provides that Conrail has the exclusive right to perform switch movements from a yard within the Detroit Shared Assets Area to a local industry within the Shared Assets Area. Alternatively, Defendant argues that even if Decision 89 applies, it grants Norfolk Southern the right only "to operate and use" the shared assets, not to assert contractual rights and damage claims.  Decision 89 states:

> *Shared Assets Areas And Operating Agreements*.  Both CSXT and NSR will be permitted to serve shipper facilities located within the three SAAs . . ., which will be owned, operated, and maintained by Conrail for the exclusive benefit of CSX and NS. CSXT and NSR will enter into as SAA Operating Agreement with CRC in connection with each of the SAAs . . .
> \*\*\*
> (3) The Detroit SAA encompasses all Conrail trackage and access rights east of the CP-Townline . . . and south to and including Trenton . . . .

(Def. Mot. Ex. 2, at 31.)

The segment of tracks that is the subject of the current dispute is located in the "Detroit SAA," which is one of Conrail's Retained Assets under the SAAOA.  According to Decision 89:

> [B]oth the Allocated Assets conveyed to CSX and NS as well as the Retained Assets made available by Conrail to CSX or NS or both will be enjoyed and used by CSX and NS (subject to the terms of the governing agreements) as if the carrier in question were itself Conrail.  Applicants similarly intend that the SAAs will be used, enjoyed, and operated as fully by CSX and NS as if each of them were Conrail.

11

(Def. Mot. Ex. 2, at 33.)  Decision 89 further provides that following the division of Conrail's assets, "all transportation services performed by [Conrail] will be performed as agent or subcontractor of CSXT or NSR."  (Def. Mot. Ex. 2, at 34.)

Defendant argues that Decision 89 does not apply because the SAAOA specifically designated the rail services at issue in this lawsuit to Conrail, not Norfolk Southern.  Defendant relies on Section 3(d) in the Operations section of the SAAOA, which indicates that "at the request of and as an agent for [Norfolk Southern and CSX], [Conrail] shall perform Switching and Yard Services required by [Norfolk Southern or CSX] within the Shared Assets Area . . .  (Def. Mot. Ex. 3, at 12.)  The SAAOA also states that "Switching and Yard Services and other services performed by [Conrail] for [Norfolk Southern or CSX] under this Agreement shall be performed as an agent for, and for the account of, [Norfolk Southern or CSX]."

The language of the SAAOA is clear that Conrail will perform this service at the request of and as an agent for Norfolk Southern or CSX.  Conrail is not operating as an independent carrier, but merely the agent to its owners.  The SAAOA even recognizes that the transfer or exchange of freight traffic between Conrail and one of its owners within the Shared Assets Area "shall not constitute an interchange of freight traffic or freight rail cars for purposes of determining rates, routes, divisions or interline settlements relating to any such freight traffic."  (Def. Mot. Ex. 3, at 13).  This statement indicates that the SAAOA intends for Conrail and Norfolk Southern (or CSX) to be treated as the same entity with regard to third parties.  The fact that Norfolk Southern uses an agent to deliver freight in certain areas is not meant to limit its rights under the SAAOA.

Additionally, the first page of the SAAOA indicates that Conrail, Norfolk Southern, and CSX:

> [D]esire that the Shared Assets shall be owned, operated and maintained by CRC and used by or for the exclusive benefit of CSXT and NSR, and that CSXT and NSR shall each have <u>full and equal rights to use the Shared Assets</u> to provide competitive railway freight transportation services to, from and between all places within the Shared Assets Area.

Def. Mot. Ex. 3, at 1 (emphasis added). The SAAOA defines the Shared Assets to mean "tracks . . . <u>and rights related thereto</u>, which [Conrail] owns, leases or otherwise has the right to operate over . . ." Def. Mot. Ex. 3, at 6 (emphasis added).

The SAAOA intended for Conrail's rights to extend to Norfolk Southern and CSX, not for those rights to be limited. The fact that the SAAOA provided that Norfolk Southern had to use Conrail as its agent in that particular area does not mean that Conrail is operating as a separate entity and is not meant to curtail Norfolk Southern's rights.

Defendant argues that Decision 89, even if applicable to this case, gives Norfolk Southern and CSX the right to operate and use the Shared Assets, but not contractual rights to damage claims. Defendant relies on the language indicating that CSX and Norfolk Southern "shall have the right *to operate and use*" the Shared Assets, including those presently operated by Conrail under trackage rights or leases. (Def. Mot. Ex. 2, at 168.) Defendant further relies on Decision 89's order, which states that CSX and Norfolk Southern "may conduct . . . operations *over the routes* of Conrail as provided for in the application, including those presently operated by [Conrail] under trackage rights or leases . . . as fully and to the same extent as [Conrail]." (Def. Mot. Ex. 2, at 175.)

13

Defendant fails to acknowledge the very next order, which states that CSX and Norfolk Southern "may use, operate, perform, and *enjoy* the Allocated Assets and the assets in the Shared Assets Areas consisting of *assets other than routes* (including, without limitation, the Existing Transportation Contracts) . . . to the same extent as [Conrail] itself could." (*Id.*)

Defendant states that if the STB had intended to go beyond granting operating and use rights and overriding non-assignment clauses, it would have done so in explicit language. The Court finds that the STB did exactly that. Because the Court finds that the language of the STB to be clear and unambiguous, the Court does not find it necessary to refer this question to the STB under the doctrine of primary jurisdiction.

Defendant maintains that Plaintiffs needed to formally assign the TRA to Norfolk Southern for the benefit of the contract to run to Norfolk Southern. This, however, disregards the language of the SAAOA and Decision 89, which unambiguously designates Conrail as an agent to Norfolk Southern and gives Norfolk Southern the right to use and *enjoy* the assets in the Shared Assets Area to the same extent as Conrail itself could. The 1996 TRA is one of those assets.

The Court finds that Defendant has fallen far short of establishing that there is a sufficient factual basis to determine that Norfolk Southern lacks standing. Defendant's motion for summary judgment against Norfolk Southern for lack of standing is DENIED.

    **2.    The TRA**

Plaintiffs argue that even if Decision 89 and the SAAOA does not give Norfolk Southern standing to enforce the TRA, that standing is granted under Article 15 of the TRA itself. Article 15 states:

> <u>This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto</u>, including, without limitation, the successors and assigns of GTW's interest in the Trackage or any portion thereof. Neither party hereto shall transfer or assign this Agreement, or any of *its* rights, interests or obligations hereunder, to any person, firm, or corporation without obtaining the prior written consent of the other party to this Agreement; provided, however, that <u>such consent shall not be necessary if such transfer or assignment is to a purchaser, successor or assign of all or substantially all of the rail properties of one of the parties</u> or to a purchaser, successor or assign of GTW's interest in the Trackage or any portion thereof.

(Def. Mot. Ex. 1.) Prior to 1999, Conrail operated as an independent company. In 1999, Norfolk Southern and CSX acquired 58% and 42% of most of Conrail's assets, respectively, and joint control of certain retained or "shared" assets. Defendant acknowledges that Conrail is owned by Norfolk Southern (58%) and CSX (42%). (*See* Def. Second Amended Counterclaim ¶¶ 3-4.)

It appears from the language of the TRA, then, that Norfolk Southern and CSX are purchasers of substantially all of the rail properties of one of the parties and, therefore, Conrail could transfer or assign its rights under the TRA to Norfolk Southern and CSX. Defendant argues, however, that Plaintiffs never assigned the TRA to Norfolk Southern.

While Section 15 could give Norfolk Southern rights under the TRA, there is no indication that the assignment is self-executing and Plaintiffs have not alleged that they assigned the TRA to Norfolk Southern. Accordingly, under the TRA, without consideration of the SAAOA and Decision 89, Norfolk Southern does not have standing to enforce the TRA unless Conrail actively assigns Norfolk Southern those rights.

**IV.    Conclusion**

15

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

                                              s/Nancy G. Edmunds
                                              Nancy G. Edmunds
                                              United States District Judge

Dated: February 16, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 16, 2012, by electronic and/or ordinary mail.

                                              s/Carol A. Hemeyer
                                              Case Manager